**BROTHERHOOD OF LOCOMOTIVE
FIREMEN & ENGINEMEN
et al., Appellants,**

v.

**BUTTE, ANACONDA & PACIFIC RAIL-
WAY COMPANY et al., Appellee.**

No. 16882.

United States Court of Appeals
Ninth Circuit.

Jan. 10, 1961.

Harold C. Heiss, Russell B. Day, Cleveland, Ohio, E. J. Foley, D. L. Holland, Butte, Mont., for appellants.

W. M. Kirkpatrick, P. L. MacDonald, R. Lewis Brown, Jr., J. B. Woodlief, Butte, Mont., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges

BARNES, Circuit Judge.

This action arises out of a prior adjudication wherein Butte, Anaconda & Pacific Railway Company, appellee herein, sought and was denied an injunction against a strike then contemplated by appellants. Butte, Anaconda & Pacific Ry. Co. v. Brotherhood of Locomotive Firemen & Enginemen, D.C.Mont.1958, 168 F.Supp. 911. Jurisdiction, then and presently, exists because the action arises under the laws of the United States; viz. the Railway Labor Act, 45 U.S.C.A. §§ 151–163, and the amount in controversy exceeds the jurisdictional limit in force when the action was originally filed. 28 U.S.C. § 1331. This court has jurisdiction on appeal. 28 U.S.C. § 1291.

In late 1957 appellee sought to induce appellants to agree to certain changes in the terms of their employment contracts. Appellee desired that switching crews, which were then composed of five men, be reduced to three men. When appellants refused to accede to appellee's demand, appellee, acting under section six of the Railway Labor Act, served upon appellants notices for changes in their contracts (45 U.S.C.A. § 156). The services of the National Mediation Board were requested. A few months later, however, appellee attempted to withdraw the section six notices, and to terminate the services of the mediation board. Appellee announced that the switching operations, previously conducted by its employees, would, after a forthcoming change in switching yards, be conducted by employees of its parent corporation, the Anaconda Company. Anaconda Company employees are represented by the International Union of Mine, Mill, and Smelter Workers.

Responding to appellee's actions, appellant Brotherhoods issued a strike notice, effective March 14, 1958. On March 13, appellee obtained from a Montana state court a temporary injunction against the strike; because of the presence of a federal question, however, the case was transferred to United States District Court. The district court concluded that appellee had violated the "status quo provisions" of the Railway Labor Act, which preclude alterations in working conditions after intervention by the National Mediation Board. Thus since appellee was acting in violation of the law, it was not entitled to the remedies provided by a court of equity. Accordingly, the trial court dissolved the injunction. This determination was upheld on appeal in a decision rendered by this court on May 18, 1959. 268 F.2d 54, certiorari denied 361 U.S. 864, 80 S.Ct. 124, 4 L.Ed.2d 104.

Before oral argument in the appeal just mentioned, the International Union of Mine, Mill & Smelter Workers, and its local, Butte Miners' Union No. 1, obtained a temporary restraining order from a Montana state court. This restraining order, which is still in effect, prohibits Anaconda Company from giving loading and switching work, now accomplished by members of the Miners' Union, to members of appellant brotherhoods. Accordingly, a strike by appellants would be futile; appellee cannot restore the status quo so long as its parent is bound by the restraining order in question. To rectify this situation appellants filed a supplemental answer and counterclaim in the federal district court for the District of Montana. The relief sought by appellants is twofold; first

they request an injunction preventing the Miners' Union from progressing with their suit in state court or attempting to secure compliance with the temporary restraining order; secondly, they ask for an order requiring appellee to restore the status quo. The district court, however, denied appellants leave to file their supplementary answer and counterclaim. Hence, appellants have taken this appeal.

■■■ Appellants contend that the original decree beside dissolving the injunction previously obtained by appellee, also determined that appellee had violated the status quo provisions of the Railway Labor Act. Appellee can be forced to restore the status quo, however, only if it is relieved from the restraining order obtained by the Miners' Union. Thus, appellants contend here, as they did in the court below, that the Miners' Union must be made a party to this dispute in order to enforce the trial court's original decree.

Appellants' argument overlooks the fact that the trial court in its original decree did not order appellee to restore the status quo. True, the trial court did determine that appellee had violated the Railway Labor Act, but the court made this conclusion only as a logical step on the path to its final decision. And that decision did no more than dissolve the injunction which appellee had originally obtained from a Montana state court. That *restoration* of the status quo was *not* an issue in the original proceeding is conclusively shown by an examination of this court's review of that proceeding. This court stated as follows:

"On similar reasoning we agree with the conclusion of the district court that appellant has not maintained the status quo pending completion of the mediation proceedings, as required by section 6 of the Act. This alone is enough to warrant dismissal of appellant's action for injunctive relief *unless the decree sought to be entered would also require restoration of the status quo.* Neither party has asked for the lat-

ter relief." 268 F.2d 54, at page 60. (Emphasis added.)

It thus becomes clear that the error in appellants' argument stems from the confusion of two concepts: (1) *restoration* of the status quo, and (2) *violation* of the status quo provisions of the Railway Labor Act. The former was not an issue in the prior action. The latter was an issue, but its determination was merely an essential preliminary to the court's final determination. Appellants, then, can be successful in their attempt to bring in the Miners' Union as a party only if they first convince the court below or this court it should modify the original decree to require appellee to restore the status quo.

The trial court held, however, that appellants could not now ask for such relief. Did the trial court err in this determination? In our opinion, the trial court was correct in this crucial conclusion, and should therefore be affirmed.

Appellee contends that nothing in the Rules of Civil Procedure entitles appellants at this late date to reopen and amend the judgment. Rule 59(e), 28 U.S.C.A., provides that a motion to amend the judgment must be served within ten days of the entry of judgment. Appellants apparently concede that an amendment of the judgment cannot now be made. Appellants contend, however, that they are not seeking to amend the judgment. Their aim is merely to enforce an existing decree; and for such purpose a supplementary bill assuredly will lie. Root v. Woolworth, 1893, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123.

The difficulty with this argument is similar to that which infects appellants' argument in favor of joining the Miners' Union. The trial court in its original decree did not order any relief *which can now be further effectuated* by ordering appellee to restore the status quo. The court did nothing more than dissolve the injunction against appellants' contemplated strike. As a step along the route to this result the court determined that appellee had violated the Railway

Labor Act, but no relief was predicated upon this conclusion other than the dissolution of the injunction. The decree granting that relief is self executing; it cannot be made more effective by any further order or decree.

A consideration of the facts of Root v. Woolworth, supra, upon which appellants strongly rely, will demonstrate appellants' error. In Root a supplemental bill was indeed filed some twenty years after the original decree, but it was a genuine supplemental bill, *further effectuating the original decree.* The original decree, determining that plaintiff's predecessor in interest had paramount title to the realty in dispute, required defendant to execute a conveyance to plaintiff's predecessor in interest. The required conveyance was subsequently executed by a special master. Years later, however, defendant re-entered upon the premises in controversy with the purpose, allegedly, of inducing people to accept leases under him, thereby driving plaintiff to a multiplicity of actions to re-establish his right to the premises. Accordingly, plaintiff requested an injunction to enforce the original decree. The trial court permitted plaintiff's bill to be filed as a supplemental bill and granted its prayer. In its opinion, affirming the trial court, the United States Supreme Court characterized plaintiff's bill as supplementary *and ancillary* in character, *effectuating the original decree.* The court noted (150 U.S. at page 412, 14 S.Ct. at page 139) that the original decree "necessarily included and carried with it the right of possession to the premises * * *."

Thus in Root the *relief* granted in the original decree was of such a nature that it could be and was made more effective by further court order. In the instant case, the relief granted—the dissolution of the injunction—cannot be and will not be further effectuated by an additional decree ordering appellee to restore the status quo.

▆ Appellants contend, however, that the facts, as found by the trial court in the initial action, entitled it to relief it now prays for in its "supplemental pleadings." Under Rules of Civil Procedure, Rule 54(c), the court should enter the relief to which a party is entitled regardless of whether the party has demanded such relief in its pleadings. Granting all that appellants here contend, it would seem that they are tardy in raising these points. If a party, by virtue of Rule 54(c), is entitled to some form of relief beyond that included in the judgment, the time to demand such relief is immediately after the entry of judgment (Rule 59(e)), or at the latest, on appeal. Surely appellants cannot expect to obtain such relief at this late date.

The considerations above presented, in our opinion, are adequate to sustain the trial court's order. The trial court, however, suggested two additional reasons for denying appellants' motion to file supplemental pleadings. The court pointed out that the occurrences upon which appellants base their claim for restoration of the status quo had transpired before the filing of their answer. Under Rule 15(d), the purpose of supplemental pleadings is to relate events "which have happened since the date of the pleading sought to be supplemented." In response to this point appellants assert that a novel occurrence is to be found in the suit by the Miners' Union against Anaconda Company. This fact, however, relates to the question of whether the Miners' Union ought to be made a party to this action, and not to the question of whether appellee should have been ordered to restore the status quo.

▆ The trial court also pointed out that appellants' claim for restoration of the status quo is a compulsory counterclaim under Rule 13(a). The "restoration" claim arises out of the same transaction as the claim for an injunction, and it would not require for its adjudication the presence of any third party over whom the court would be unable to acquire jurisdiction. Such a claim must, under Rule 13(a), be included in the original pleading; if it is

not, it is lost and cannot later be asserted. Union Paving Co. v. Downer Corp., 9 Cir., 1960, 276 F.2d 468, 470; Hancock Oil Co. v. Universal Oil Products Co., 9 Cir., 1940, 115 F.2d 45, certiorari denied 314 U.S. 666, 62 S.Ct. 127, 86 L.Ed. 533.

Appellants in response to this argument contend that the facts for their counterclaim were pleaded in the original action; all that was omitted was the prayer for relief, and that under Rule 54(c) this omission is immaterial. This argument has already been disposed of. If appellants did in fact plead and prove facts entitling them to a restoration of the status quo, they should have requested long ago that the judgment be refashioned toward that end. Their request now is too late.

In view of the foregoing, we believe that there is no merit in appellants' further contention that Rule 13(f) (omitted counterclaim) applies here. That rule provides that when justice requires, a party may assert an omitted counterclaim by amendment. The interests of justice might be served by permitting appellants to plead now for restoration of the status quo and for an injunction against the Miners' Union. But this request comes late; and it is no less tardy when it is asserted under the provisions of Rule 13(f). Furthermore, the suggestion which appellants make here is at variance with their contention that they did, in fact, plead the counterclaim in the original action, omitting only to include a prayer for relief. In other words, we do not believe that appellants can claim relief under both Rule 54(c) and Rule 13 (f).

One minor matter remains to be considered. Appellee contends that certain of appellants' Specifications of Error are not designated in their Statement of Points on Appeal. This, appellee claims, violates Rule 17, subd. 6 of this court, 28 U.S.C.A.; and accordingly, Specifications of Error numbers one, two, three and five should not be considered by this court

Appellee cites Greyhound Corp. v. Blakely, 9 Cir., 1958, 262 F.2d 401. This case does not support appellee's position. Judge Jertberg in Greyhound did say that specifications of error not presented in accordance with Rule 18, subd. 2(d) need not be considered by this court (262 F.2d at page 406), but then went on to say:

"Notwithstanding defendant's failure to comply with the rule, we will consider the specifications since neither the appellee nor this Court has been misled."

Appellee has not asserted that either it or this court has been misled by appellants' asserted failure to comply with this court's rules. Hence even if appellants' specifications of error are not presented in strict compliance with the court's rules, the court need not but may still consider them. We have chosen so to do. Such consideration, however, leads us to affirm the trial court's holding.